**MOBAY CHEMICAL CORPORATION, CHEMAGRO AGRICULTURAL DIVISION, Plaintiff,**

v.

**Russell E. TRAIN, Administrator of the United States Environmental Protection Agency, Defendant.**

**No. 75 CV 238 W–4.**

United States District Court, W. D. Missouri, W. D.

May 23, 1975.

Joseph E. Stevens, Jr., and C. David Barrier, of Lathrop, Koonz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for plaintiff.

Mary Schneider, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

In this action plaintiff asserts that the defendant Administrator of the Environmental Protection Agency (EPA) is violating the provisions of certain sections of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 135 et seq., as amended by the Federal Environmental Pesticide Control Act of 1972, (FEPCA), 7 U.S.C. § 136 et seq. (1972). By way of relief plaintiff prays for a declaratory judgment

that the actions of the Administrator complained of violate FIFRA as amended by FEPCA, and preliminary and permanent injunctions restraining the Administrator from such violations. This matter is presently before the Court to consider plaintiff's motion for the issuance of a preliminary injunction.

### Jurisdiction And Venue

[1, 2] In pertinent part, plaintiff complains that the Administrator has violated and is violating § 3 of FIFRA, as amended by FEPCA, 7 U.S.C. § 136a, in that, *inter alia,* the Administrator is considering certain data submitted by the plaintiff in support of certain of its applications for pesticide registrations in connection with applications of other individuals and corporations, without plaintiff's consent and without payment or offer of payment of compensation from such applicants to the plaintiff for the use of such data. This Court has subject matter jurisdiction to consider this matter pursuant to § 16(c) of FIFRA, as amended by FEPCA, 7 U.S.C. § 136n(c), which provides as follows:

"Jurisdiction of Districts Courts.—The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this Act." 7 U.S.C. § 136n(c) (1972).[1]

And, as plaintiff resides in this District, and no real property is herein involved, venue is proper in this District pursuant to the provisions of 28 U.S.C. § 1391(e)(4) (1966).[2]

### Background of the Controversy

The amendments to FIFRA made by FEPCA were enacted on October 21, 1972, and were generally effective on that date, except that where regulations

1. It is accordingly not necessary to consider plaintiff's assertions that jurisdiction is also present in this case under § 16(a) of FIFRA, as amended by FEPCA, 7 U.S.C. § 136n(a) ; under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ; under general federal question jurisdiction, 28 U.S.C. § 1331 ; or under 28 U.S.C. § 1337 or 1361.

2. It is worth note that the defendant Administrator has not objected to venue in this District in this case. Nor is any contention made that plaintiff lacks standing to bring this action.

were necessary for the implementation of any sections such regulations were required to be promulgated and effective within 90 days after the date of enactment. § 4(a) of FEPCA, 7 U.S.C. § 136 note (1972). Apparently excepted from this general provision, however, are those amendments to FIFRA regarding registration and classification of pesticides. § 4(c)(1) of FEPCA provides that

"Two years after the enactment of this Act the Administrator shall have promulgated regulations providing for the registration and classification of pesticides under the provisions of this Act, and thereafter shall register all new applications under such provisions." See § 4(c)(1) of FEPCA, Public Law 92–516, 7 U.S.C. § 136 note (1972).

The amendments in the pesticide registration and classification procedures of FIFRA made by FEPCA are reflected, in pertinent part, in amended § 3 of FIFRA, 7 U.S.C. § 136a.[3] Subsection (c)(1)(D) of this amended section is addressed to the use of data submitted by an applicant by the Administrator in considering a pesticide registration application of another individual or corporation. In relevant part, this subsection provides that

" . . . data submitted in support of an application shall not, without permission of the applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall have first offered to pay reasonable compensation for producing the test data to be relied upon, and such data is not protected from disclosure by Section 10(b) (7 U.S.C. § 136h(b)). If the parties cannot agree on the amount and method of payment, the Administrator shall make such deter-

mination and may fix such other terms and conditions as may be reasonable under the circumstances. The Administrator's determination shall be made on the record after notice and opportunity for hearing. If the owner of the test data does not agree with said determination, he may, within thirty days, take an appeal to the federal district court for the district in which he resides with respect to either the amount of the payment or the terms of the payment, or both. In no event shall the amount of payment determined by the court be less than that determined by the Administrator; . . . ."

Section 3(c)(1)(D) of FIFRA, as amended by FEPCA, 7 U.S.C. § 136a(c)(1)(D) (1972).

On November 19, 1973, the Administrator published in the Federal Register a document entitled "Registration of Pesticides", which was subtitled "Consideration of Data by the Administrator in Support of Applications; Interim Policy". (Hereinafter, the "Interim Policy Statement".) See 38 Fed.Reg. 31862–31864. The policy was adopted by the Administrator on November 14, 1973.

In the Interim Policy Statement the Administrator states that Section 3(c)(1)(D) of FIFRA, as amended by FEPCA, must be implemented by the Administrator within two years of enactment of FEPCA, or on or before October 21, 1974. He further states, however, that the EPA has discretionary authority to implement these amended provisions prior to the two year time period, in whole or in part. The Interim Policy Statement then serves notice that the Administrator is making effective immediately, under the guidelines contained in the Interim Policy Statement, that portion of Section 3(c)(1)(D) re-

---

**3.** This section sets forth the method of application for a pesticide registration, including a listing of all data needed to be included on any such application. Other subsections of this section provide that no pesticide which is not registered may be sold or distributed, etc., set forth the duty of the Administrator regarding applications for registrations, and provide for classification of pesticides.

lating to limitations on data the Administrator may consider on registration applications, but deferring the applicability of the remainder of that subsection (dealing with compensation determinations by the Administrator in the event that the applicant and the prior applicant cannot agree upon a figure or method of compensation for the use of test data).

Amended subsection 3(c)(1) of FIFRA, 7 U.S.C. § 136a(c)(1) sets forth the information required to be submitted to the EPA in connection with an application for a pesticide registration. The applicant must include his name and address, and the name and address of any other person whose name will appear on the labeling of the pesticide; the name of the pesticide; a complete copy of the labeling of the pesticide and a statement of all claims to be made for it and directions for use; the formula of the pesticide, and a request that the pesticide be classified for general or restricted use, or both. See § 3(c)(1)(A, B, C, E, F). In addition to this information, subsection § 3(c)(1)(D) requires that, if requested by the Administrator, a description of all tests conducted on the pesticide and the results upon which all claims for the pesticide are based must be submitted. The use by the Administrator of data submitted by one applicant in connection with the application of another individual or corporation is restricted as set forth *supra*. Pursuant to this subsection, the Interim Policy Statement requires that the following additional information be submitted on all pesticide registrations: (1) an express written offer to pay reasonable compensation for the use of test data submitted to EPA by other applicants; (2)(a) all required supporting data, or (b) specific references to all data to be considered in support of the registration application, or (c) a request that registration proceed on the basis of use patterns, efficacy and safety previously established under FIFRA.

The Interim Policy Statement then provides that the EPA will publish in the Federal Register upon receipt of each application for registration a notice of such application including the following information: (1) the name and address of the applicant; (2) the EPA registration number or file symbol; (3) the name of the product; (4) a listing of the active ingredients and their percentages. The Interim Policy Statement then provides that

"Any person who (a) is or has been an applicant, (b) desires to assert a claim for compensation under sec. 3(c)(1)(D) against an applicant proceeding under 2(c) (request that registration proceed on the basis of existing use patterns and safety determinations under FIFRA) with respect to data contained in or submitted in connection with such person's application, and (c) wishes to preserve his opportunity for determination of the amount of reasonable compensation by the Administrator under Sec. 3(c)(1)(D) must, within 60 days following the Federal Register publication of notice, notify the Administrator and the applicant named in the Federal Register of his claim by certified mail."

Included in such notice is required to be the following information, "at a minimum": (1) the claimant's name and address, (2) the name of the product upon which the claimant made his application and in connection with such application he submitted data upon which he desires to make a claim for compensation; (3) the EPA registration number or file symbol number of the claimant's application; (4) the dates of submission of the data; (5) the active ingredients; (6) a "specific reference to the data as to which claimant wishes to assert a right of compensation" and (7) a particularized reference to the application regarding which the claim is made. If no notice is received within the sixty day period, "the Administrator will not at

any time accept a request to make a determination of reasonable compensation with respect to the claim under sec. 3(c)(1)(D)". If a notice of claim is received, the Interim Policy Statement then requires the applicant to advise the EPA if he desires to rely on any data submitted by the claimant and specifically pointed out in the claim. If no timely claim is submitted, the Administrator will consider data submitted by other applicants.

In plaintiff's complaint and amendment thereto it asserts that the Administrator has violated or is violating subsection 3(c)(1)(D) with respect to eight pesticide registration applications by considering in support of such applications test data submitted by plaintiff without plaintiff's consent and without the offer of or payment of compensation to plaintiff for the use of such data by the respective applicants. Six of these applications were filed by Aceto Chemical Co., Inc., one by Colorado International Corporation, and one by Zoecon Corporation. Of these applications, a registration had been issued by the EPA with respect to one of the Aceto applications and the Colorado International application prior to the institution of this litigation, and no preliminary injunctive relief is requested with respect to those applications.

Plaintiff initially requested preliminary injunctive relief preventing the Administrator from considering plaintiff's test data in connection with the remaining six applications. However, plaintiff did timely file claims under the Interim Policy Statement with respect to the five remaining Aceto claims, and the Administrator has agreed in a "Stipulation and Agreement" filed in this case not to consider any of plaintiff's data in support of these applications pending the final resolution of this litigation. As such, plaintiff's requests for

preliminary injunctive relief with regard to these five applications are moot.

A full evidentiary hearing to consider plaintiff's motion for a preliminary injunction with respect to Zoecon's application was held on May 9, 1975. The evidence adduced at the hearing consisted of a stipulation filed by the parties and the testimony of one witness, Glenn Brussell, the manager of the registration section of the plaintiff.

The evidence reveals that the Zoecon application for a pesticide registration was filed with the EPA after October 21, 1974, and published in the Federal Register on January 23, 1975.[4] Plaintiff receives the Federal Register and was aware shortly thereafter that the Zoecon application had been filed with the EPA. Thereupon, plaintiff instituted its complex internal procedures designed to determine, in compliance with the Interim Policy Statement, whether it was possible that Zoecon's application might rely upon any test data previously submitted by plaintiff; if so whether Zoecon had been given an authorization to rely upon such data by plaintiff; and if no authorization had been given, whether a claim for compensation under the Interim Policy Statement would be filed. Both due to the complexity of the procedures followed by plaintiff in determining whether to file a claim, and due to oversight, no claim was filed by plaintiff with respect to the Zoecon application until April 24, 1975, after the expiration of the sixty day period for the filing of claims under the Interim Policy Statement. The parties have stipulated that in order to issue the registration to Zoecon Corporation the defendant Administrator would have to consider test data developed by plaintiff and submitted to the Administrator in connection with previous registration applications by plaintiff.

Zoecon Corporation is not a party to this action, and did not appear at the

---

4. Although not specifically introduced at the hearing, it appears the Zoecon's application was filed with the EPA on December 18, 1974. See the attachments to defendant Train's May 7, 1975 suggestions in opposition to the issuance of a preliminary injunction.

hearing. However, counsel for the Administrator advised the Court that Zoecon Corporation did receive actual notice of this proceeding and of the hearing set on the motion for the preliminary injunction. Apparently Zoecon Corporation has determined not to request leave to intervene in this proceeding.

### Applicability of § 3(c)(1)(D)

Section 3(c)(1) of FIFRA, as amended by FEPCA, was fully effective at least by October 21, 1974. Section 4(c)(1) of FEPCA, 7 U.S.C. § 136 note (1972) provides that within two years after the enactment of FEPCA (October 21, 1972), any regulations necessary for the implementation of the amendments to FIFRA's procedures for the registration of pesticides shall have been promulgated and thereafter all new applications for registration shall be considered under the provisions of the FEPCA amendments to FIFRA. Therefore, it is clear that the Administrator must consider Zoecon's application under the provisions of § 3(c) of FIFRA as amended, as Zoecon's application was filed with the EPA more than two years after the enactment of FEPCA.[5]

The question presented is therefore whether the Administrator is violating the mandate of § 3(c)(1)(D) in considering data submitted by plaintiff in support of Zoecon's application. In part pertinent to this question, the language of subsection 3(c)(1)(D) is explicit. It provides that

". . . data submitted in support of an application shall not, without permission of the applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall have first offered to pay reasonable compensation for producing the test data to be relied upon . . . ."

In the context of this case, this language expressly prohibits the Administrator from considering any data submitted by plaintiff in connection with any of its previous applications for registrations in support of Zoecon's application for registration, unless one of two alternative preconditions are satisfied; i. e., unless plaintiff authorizes Zoecon to rely upon such data, or unless Zoecon offers to pay to plaintiff reasonable compensation for the use of such data.

It is clear that the first alternative precondition has not been satisfied. Plaintiff has not authorized Zoecon to rely upon any of its test data in support of Zoecon's application for registration. Nor has the second alternative precondition been satisfied in this case. The offer to pay reasonable compensation made by Zoecon was not made to plaintiff, but merely was an offer made to anyone whose data the EPA might consider in connection with the Zoecon application, and was only communicated to the EPA. The statutory scheme set up by subsection 3(c)(1)(D) clearly contemplates that a specific offer to pay compensation for data used will be made by the applicant seeking to rely upon such data to the previous applicant who had developed and submitted the data to the EPA.[6] Subsection 3(c)(1)(D) expressly provides that only after such an offer has been made and "the parties cannot

---

5. Plaintiff has suggested that § 3(c)(1)(D) was fully effective as of the date of enactment, evidently pursuant to § 4(a) of FEPCA, 7 U.S.C. § 136 note. However, as it is clear that all of § 3(c) was effective at least by October 21, 1974, prior to the filing of Zoecon's application, it is not necessary in this memorandum to consider whether § 3(c)(1)(D) was effective at any time prior to that date. Accordingly, no opinion is expressed in that regard. But see Amchem Products, Inc. v. GAF Corporation and Russell Train, 391 F.Supp. 124 (N.D.Ga.1975).

6. Any such offer must necessarily specifically delineate the data sought to be used, and the amount and method of compensation to be paid. Absent an offer of this specified nature the prior applicant would not be able to determine what data it had developed that the present applicant desired to rely upon in support of its application, and therefore could not possibly be in a position to respond meaningfully to such offer.

agree on the amount and method of payment" does the Administrator enter into the process of determining the amount and method of compensation. The administrative process for determination of the amount and method of compensation is only commenced after the offer from the present applicant has been made and negotiations concerning the amount and method of ·compensation have failed to result in agreement. It therefore appears that should the Administrator in determining whether to grant the Zoecon application consider any data submitted by plaintiff in support of any of its registration applications the Administrator would be violating the express restrictions of subsection 3(c)(1)(D).

The Administrator asserts, however, that plaintiff did not timely file its claim for compensation with the Administrator under the Interim Policy Statement and therefore has lost whatever right it had to compensation under subsection 3(c)(1)(D). Although in the context of this memorandum this Court expresses no final opinion as to the validity of the procedures set forth in the Interim Policy Statement, it is necessary to observe that as applied to this case the procedures therein set forth apparently conflict with the provisions of subsection 3(c)(1)(D).

Under the procedure set forth in the Interim Policy Statement, as described previously, it was incumbent upon the plaintiff in this case to recognize, from the bare notice filed in the Federal Register, that Zoecon's application might possibly seek to rely upon data submitted to the EPA by plaintiff, and then to file a claim within sixty days listing exactly what data plaintiff had submitted that it desired to protect with reference to the Zoecon application. In determining whether to file a claim, plaintiff was not even aware of the exact data upon which Zoecon sought to rely.

■ By implementation of this procedure the Administrator has failed to follow the statutory scheme as provided by the Congress. The procedure set forth in subsection 3(c)(1)(D) places the burden of satisfying the preconditions to use by the Administrator of a prior applicant's data upon the present applicant, not upon the prior applicant. Unless the present applicant can demonstrate that he has either (1) received authorization from the prior applicant to rely upon such data, or (2) made a specific offer of reasonable compensation to the prior applicant upon whose data he seeks to rely, the Congress has prohibited the Administrator from considering data submitted by prior applicants. To the extent that the procedures outlined in the Interim Policy Statement permit the Administrator to consider data in support of Zoecon's present application that was submitted by plaintiff in support of its prior registration applications, where Zoecon has not secured permission of the plaintiff to rely upon such data, and where Zoecon has not made a specific offer to this plaintiff of reasonable compensation for the use of any such data, it is the preliminary conclusion of this Court that the procedures set forth in the Interim Policy Statement conflict with the express language of subsection 3(c)(1) (D).[7] To permit the Administrator to

---

7. The Administrator argues that any other procedure for implementation of subsection 3(c)(1)(D) would result in the EPA being unable to process applications in an expeditious manner. If that is so as a result of the provisions of subsection 3(c)(1)(D), the remedy for this situation lies with the Congress, and not this Court. It must also be noted that Congress enacted subsection 3(c)(1)(D) over the opposition of the EPA.

See 1972 U.S.Code Cong. and Admin.News, Vol. 3 pp. 3993 et seq., and p. 4043.

Further, the provisions of this subsection do not appear to place any great burden on the applicant desiring to rely upon test data submitted by other individuals. All that is required is that the applicant determine what data it seeks to rely upon, and then either secure permission to rely upon such data or make the required offer of compen-

consider in support of Zoecon's application data submitted by plaintiff in support of its prior applications for pesticide registrations would, under the facts of this case, contravene the obvious Congressional purpose behind subsection 3 (c)(1)(D), which is to protect individuals who do research and testing in connection with the development of a pesticide from the free use by others of the fruits of such labor.[8]

For the reasons stated, it is concluded that the plaintiff is likely to prevail upon the merits of its claim against the Administrator with regard to the Zoecon application for a pesticide registration.[9]

Next, the Administrator asserts that Zoecon's absence from this proceeding weighs against the issuance of a preliminary injunction. Clearly, Zoecon, although perhaps an interested party to these proceedings, is not a necessary party within the meaning of Rule 19, F.R.Civ.P. The complete relief sought by plaintiff can be granted between the parties herein present. See Pennwalt Corporation, Inc. v. Russell E. Train, No. 4–72918 (E.D.Mich.1975). Further Zoecon would suffer no real damage by the issuance of the requested preliminary injunction. All that the injunction would prohibit would be the use by the

Administrator of data previously submitted to the EPA by plaintiff in support of Zoecon's application, and this Court has concluded above that the Administrator is not entitled under the applicable statute to consider such data. Should the injunction issue, the Administrator would not be prohibited from considering in connection with Zoecon's application any other data or material. Further, neither the Administrator nor Zoecon Corporation (should it desire to intervene in this proceeding) would be prohibited from at any time requesting that the preliminary injunction, should it issue, be dissolved on the ground that the alternative preconditions to consideration of plaintiff's data by the Administrator in support of Zoecon's application had been satisfied. Thus, the absence of Zoecon Corporation from this proceeding does not weigh against the issuance of the requested injunction.

Third, the Court finds that the plaintiff will suffer injury sufficient to warrant the issuance of a preliminary injunction. Plaintiff will be irreparably injured should its data be considered by the Administrator in connection with Zoecon's application for a registration without Zoecon Corporation complying with the statutory prerequisites of §

---

sation for the use of such data to the prior applicant. Should an applicant not desire to follow this procedure, he has a clear alternative: he may develop and submit sufficient test data on his own.

8. It is worth note to point out that Congress has also provided that disputes as to the amount of compensation to be paid for the use of prior data are to be settled by the Administrator, with recourse to an appropriate district court for review of the Administrator's decision. These provisions of subsection 3(c)(1)(D) insure that an initial applicant is not able to take unfair competitive advantage of a subsequent applicant, but that the initial applicant will be assured of receiving a fair sum for the use of his data by the new applicant.

9. Although not determinative of any matter at issue at this stage of this proceeding, it

is worth note that the Administrator has evidently failed to comply with the Congressional mandate requiring him to promulgate all regulations necessary for implementation of the registration procedures established by FIFRA as amended by FEPCA within two years after the enactment of FEPCA, or on or before October 21, 1974, and that on and after that date the Administrator process all applications for pesticide registrations under the provisions of FIFRA as amended by FEPCA, including all of section 3 of FIFRA, as amended, 7 U.S.C. § 136a. See § 4(c) of FEPCA, 7 U.S.C. § 136 note. It is clear that even the Administrator does not consider the Interim Policy Statement to be a regulation within the meaning of § 4(c) of FEPCA, as the last paragraph of the policy statement expressly states that regulations for implementation of subsection 3(c)(1)(D) are yet to be issued.

**1350**

3(c)(1)(D).[10]  Further, plaintiff asserts that some of the data that the Administrator may consider and disclose in connection with Zoecon's application are trade secrets so as to be absolutely protected from disclosure under § 10 of FIFRA, as amended, 7 U.S.C. § 136h.  Disclosure of any absolutely protected material would clearly constitute irreparable injury.

It further appears that the issuance of the requested injunction would be in the public interest.  In this context it is worth note that the Congress vested the district courts with jurisdiction *"specifically to enforce, and to prevent, and to restrain violations"* of FIFRA.  § 16(c) of FIFRA, as amended by FEPCA, 7 U.S.C. § 136n(c) (1972).

Accordingly, for the reasons stated, plaintiff's motion for a preliminary injunction regarding the Zoecon application for a registration will be sustained.  It is therefore

Ordered that the defendant Administrator not consider in support of the application for a pesticide registration of Zoecon Corporation, 975 California Avenue, Palo Alto, California, EPA File Symbol No. 20954–G, any test data submitted by the plaintiff in support of any of plaintiff's applications for pesticide registrations.  And it is further

Ordered that this injunction shall remain in full force and effect pending the final disposition of this litigation.  And it is further

Ordered that this injunction shall be effective upon the filing by plaintiff with the Clerk of this Court security in the sum of $500.00, pursuant to Rule 65(c) F.R.Civ.P.

---

10.  By enacting subsection 3(c)(1)(D) the Congress protected individuals applying for pesticide registrations from having any of the test data submitted in support of such applications used by the Administrator in support of the application of any other individual or corporation, unless one of the two preconditions contained in the subsection are first satisfied.  Should the Administrator consider in support of Zoecon's application any of plaintiff's test data under the facts of this case, the only protection granted to plaintiff under subsection 3(c)(1)(D) would be lost.