The DOW CHEMICAL COMPANY,
Plaintiff,

v.

Russell E. TRAIN, Administrator,
Environmental Protection
Agency, Defendant.

Civ. A. No. 76–10087.

United States District Court,
E. D. Michigan, N. D.

Dec. 23, 1976.

Terrence G. Linderman, John G. Gleeson, Dow Chemical Legal Dept., Midland, Mich., Joseph E. Stevens, Robert D. Youle, Kansas City, Mo., for plaintiff.

Jeffrey Axelrad, Catherine A. Ribnick, U.S. Dept. of Justice, Edward C. Gray, Environmental Protection Agency, Washington, D.C., Thomas M. Woods, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This cause came on for a hearing on plaintiff's motion for a preliminary injunction limited to Counts One and Two of the Amended Complaint. Plaintiff alleges that the Administrator is violating the provisions of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), as amended. Plaintiff seeks injunctive relief prohibiting the Administrator:

1. From consideration or use of plaintiff's trade secret and confidential commercial information in support of any application for registration or reregistration of a pesticide under FIFRA;

2. From consideration or use of non-trade secret and non-confidential commercial information in support of any application for registration or

reregistration of a pesticide under FIFRA, unless the defendant shall have first obtained the express written permission of plaintiff.

The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 135 *et seq.*, was originally enacted in 1947. At that time it applied only to pesticides shipped in interstate commerce and was administered by the United States Department of Agriculture. By Reorganization Plan No. 3 of 1970, 35 Fed.Reg. 15623 (1970), administration was transferred to the Environmental Protection Agency (EPA) effective December 3, 1970.

Before any pesticide could be marketed in interstate commerce, the act required that the producer have the pesticide registered. In order for registration to issue, the applicant for registration was required to demonstrate to the satisfaction of the Secretary and, later, the Administrator, the safety and efficacy of the pesticide product. If the use of a pesticide could result in a residue in or on food crops, a tolerance for such use also had to be established pursuant to Section 408 of the Food, Drug and Cosmetic Act. In order to satisfy the requirements of the acts, an application for registration of a pesticide had to be supported by substantial amounts of information and research and test data regarding the pesticide chemical.

FIFRA was amended by Section 2 of the Federal Environmental Pesticide Control Act (FEPCA), Pub.L.No. 92–516 (October 21, 1972). FIFRA as amended by FEPCA, is referred to herein as FIFRA of 1972. FIFRA of 1972 extended the registration requirement to pesticide chemicals marketed in intrastate commerce. The information, research and test data required under FIFRA to support an application for registration was also required under FIFRA of 1972. In addition, further requirements were imposed under FIFRA of 1972 for the submission of information, research and test data to assess any risk to the environment which might result from the use of the pesticide. FIFRA of 1972 also provides for the classification of pesticides and the reregistration and classification under current standards of all pesticide products registered under FIFRA prior to imposition of the new registration requirements.

FIFRA of 1972 authorized the Administrator to consider information and test data submitted in support of a previous application for registration in determining whether a subsequent application for registration had made the showings required by the act. This authorization was restricted, though, by two limitations which are the subject matter of this suit. In section 3(c)(1)(D), 7 U.S.C. § 136a(c)(1)(D), the administrator was prohibited from consideration of data protected from disclosure by Section 10(b), which is in regards to trade secrets and privileged or confidential commercial or financial information. The Administrator was further authorized to rely on information not exempted under Section 10(b) only if the applicant for registration had offered to pay reasonable compensation to the company which had originally submitted the data. Section 3(c)(1)(D) of FIFRA of 1972 was amended by Section 12 of Pub.L.No. 94–140 (November 28, 1975), which limited the above two provisions to data submitted on or after January 1, 1970. The amendment also decreed that the effective date of the provision for compensation was October 21, 1972 (the effective date of FIFRA of 1972).

The Administrator has sought to implement the provisions of FIFRA of 1972 and as amended in 1975 by the adoption of an Interim Policy Statement (38 Fed.Reg. 31862, November 19, 1973), and a Modified Interim Policy Statement (41 Fed.Reg. 3339, January 22, 1976). The defendant has conceded that these policy statements do not have the force or effect of regulations.

The Interim Policy Statement required an application for registration to contain an express offer to pay reasonable compensation for the use of any test data submitted to the EPA in support of an application for registration on or after October 21, 1972. The applicant was not required to direct this offer of compensation to anyone, nor was the applicant absolutely required to

identify information submitted by others on which this application for registration would rely. Instead, each applicant was required by paragraph two of the Interim Policy Statement to select one of three methods of proceeding. The applicant could either choose: (a) to submit all required supporting data; (b) to refer to other readily available data, either in other applications or the open literature; or (c) to request that the registration proceed "on the basis of use patterns, efficacy and safety previously established under FIFRA."

Upon receipt of an application, notice of the application was published in the Federal Register. A prior applicant seeking compensation for an application proceeding under paragraph 2(c) had 60 days following the publication of notice in the Federal Register in which to make its claim. If no claim was received within that period, the application would be processed. If a claim was received within the 60 day period, the applicant for registration was required to be notified and to elect one of three options: (1) to submit a revised application under 2(a) or 2(b); (2) to concede that the application relied upon the data on which the claim was based, and to request that EPA process the application accordingly; or (3) to request EPA approval to continue under 2(c) without reliance on the data specified by the applicant. When the applicant had selected his option, the EPA would resume the processing of the application on the basis selected. Any and all claims for compensation were deferred, supposedly for administrative determination or adjudication at a later date.

The modified Interim Policy Statement purportedly eliminated the 2(c) method of application for registration as of August of 1975. In addition, the Modified Interim Policy Statement provided at 41 Fed.Reg. 3341 that any claims objecting to the Administrator's consideration of alleged trade secrets or other matter exempt from consideration had to be made within "a reasonable period of time", not less than thirty days.

Section 4(c)(2) of FEPCA (FIFRA of 1972), 7 U.S.C. § 136 note, as amended by Section 4 of Pub.L.No. 94–140, provides that the administrator has until October 21, 1977, to reregister pesticides previously registered under FIFRA of 1947. On July 3, 1975, a final regulation was published at 40 CFR 162, 40 Fed.Reg. 28242, to implement the reregistration procedures.

It is plaintiff's position that the procedures for both applications for registration and those for reregistration are in violation of Section 3(c)(1)(D) of FIFRA, as amended. Plaintiff asserts that the procedures for registration have resulted and will continue to result in the Administrator's consideration, in regards to competitor's applications, of data previously submitted by plaintiff, and that this consideration and use will be without compensation to plaintiff and without exclusion of data protected from consideration and use because it is deemed confidential. Plaintiff asserts that the Administrator is impermissibly circumventing the requirement of 3(c)(1)(D) in the reregistration procedures by allowance of applications for reregistration without requiring consideration of all of the data which would have to be considered to support an original application for registration. Alternatively, plaintiff asserts that the Administrator is tacitly considering data submitted by plaintiff in reregistering pesticides but that he is doing so while maintaining complete disregard for the provisions prohibiting reliance on confidential information and requiring compensation for non-confidential information and data.

The Court has subject matter jurisdiction over plaintiff's claim for injunctive relief insofar as rights under FIFRA are concerned, without regard to the amount in controversy, by reason of Section 16(c) of FIFRA, 7 U.S.C. § 136n(c), which provides:

"The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain, violations of this subchapter."

See *Mobay Chemical Corp. v. Train*, 394 F.Supp. 1342 (W.D.Mo.1975).

Plaintiff also claims that the amendment to section 3(c)(1)(D) by Pub.L.No. 94–140, limiting the application of 3(c)(1)(D) to data submitted on or after January 1, 1970, deprives it of a property interest without due process contrary to the Fifth Amendment of the United States Constitution. The Court finds that the matter in controversy in this claim exceeds the sum of $10,000.00, and that the Court has subject matter jurisdiction regarding the same pursuant to 28 U.S.C. § 1331.

■■■ The Court also finds as a preliminary matter that plaintiff has not established that it is entitled to preliminary injunctive relief on its Constitutional claim. In order for a party to obtain grant of this extraordinary remedy, that party is required to show (1) a clear case of irreparable injury; (2) that the balance of injury favors the granting of the injunction; (3) that the party is likely to succeed on the merits at trial; and (4) that the issuance of the injunction would not be contrary to the public interest. *Llewelyn v. Oakland County Prosecutor's Office*, 402 F.Supp. 1379, 1392 (E.D.Mich.1975).

■■■ Plaintiff's Constitutional claim is defective in each of these respects. Plaintiff has not established a clear case of irreparable injury as it has not even attempted to demonstrate that it does not have an adequate remedy at law under the Tucker Act. See *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Likewise, because of the existence of a Tucker Act remedy against the government to recover any deficiency of Constitutional dimension, the limitation imposed by Pub.L.No. 94–140 cannot be deemed to be an unconstitutional "taking". *Rail Reorganization Act Cases, supra.* Thus, plaintiff has not established that it is likely to prevail on the merits of its claim of due process deprivation.

The Court also finds no evidence from which to conclude that the balance of injuries or that the public interest favor the grant of this portion of plaintiff's motion for a preliminary injunction. Absent a sufficient showing on these matters, the Court will defer to the tacit determinations made by Congress in limiting the application of Section 3(c)(1)(D) to information submitted in support of an application for registration on or after January 1, 1970.

At the hearing on plaintiff's application for a preliminary injunction, plaintiff presented evidence establishing that it is engaged in discovering, developing, producing and marketing pesticides for agricultural and industrial use, that its principal place of business is at Midland, Michigan, and that the defendant, Russell E. Train, is the Administrator of the United States Environmental Protection Agency, and as such, is charged with implementing and enforcing the Federal Insecticide, Fungicide, and Rodenticide Act. Plaintiff Dow Chemical presented evidence establishing that it has expended substantial time, effort and money in the compilation and development of research and test data required to obtain registrations and establish tolerances, and that much of this information and data is maintained by Dow in strict confidence, without being known either to competitors or to the public. Dow witnesses distinguished between the results of tests, which are often disclosed, and Dow's methodology, which is generally kept confidential. Plaintiff also established that the information and data compiled and developed by it provides it with a significant competitive advantage and that duplication of much of the data and information by a competitor would be both difficult and costly.

Plaintiff then presented evidence of how the administrative procedures in registering and reregistering pesticides under FIFRA violate the provisions of Section 3(c)(1)(D) to the prejudice of plaintiff.

The difficulty plaintiff has encountered regarding registration procedures is illustrated by Uniroyal's application for DYANAP. On August 28, 1975, notice was published in the *Federal Register* that Uniroyal Chemical had filed an application with the EPA for the registration of a Dinoseb product, known by the trademark DYANAP. Said application proceeded under Section 2(c) of the "Interim Policy Statement", and

requested approval for a use later post-emergence over-the-top in soybeans. This use is substantially the same as a use for plaintiff's product PREMERGE which was accepted by the EPA on September 17, 1974, upon the basis of Dow data submitted April 19, 1973, January 15, 1974, and June 3, 1974.

In October 21, 1975, plaintiff filed a claim pursuant to the "Interim Policy Statement" against the application of Uniroyal Chemical asserting its rights to compensation and additionally asserting that Dow information, research and test data relating to the requested use for DYANAP contained or related to trade secrets and should not be used by the Administrator for registration of DYANAP. By letter dated November 20, 1975, Uniroyal acknowledged to the EPA that the above DYANAP application "may rely on some of the data cited in plaintiff's claim letter."

Neither the Administrator nor Uniroyal has at any time obtained the permission of plaintiff for the Administrator to use and consider any of the information, research and test data submitted by plaintiff to the EPA, nor has the Administrator required Uniroyal at any time to make an offer to plaintiff to pay reasonable compensation for producing such data. Regardless of the fact, and in the face of plaintiff's claim of confidentiality and for compensation, the DYANAP application was registered by defendant. Subsequent to the registration, Dow requested defendant to inform it of the identity of each item of data submitted by Dow which defendant used or considered in registering this product. Defendant has not informed plaintiff of the identity of such data.

This same sequence of facts substantially occurred previously in the Agency's approval of the application of the Velsicol Chemical Company for registration of VEGA-TROL A–4D, a product containing 2, 4–D as an active ingredient.

2, 4–D is the common name for the chemical 2, 4–Dichlorophenoxyacetic acid. Plaintiff's initial registration under FIFRA for a herbicide containing 2, 4–D as an active ingredient was obtained on December 23, 1947. In accordance with FIFRA, and FIFRA of 1972, plaintiff has submitted substantial information, research and test data to USDA, FDA and EPA in support of many applications for registration of herbicides which contain 2, 4–D as an active ingredient.

On June 10, 1974, the Administrator published in the *Federal Register* a notice of a 2(c) application by the Velsicol Chemical Company for the registration of 2, 4–D, known by the trademark VEGATROL A–4D, for the purpose of obtaining EPA registration for sale and use of such product. VEGATROL A–4D contains as an active ingredient 2, 4–D in the same percentage as does plaintiff's herbicide, DMA–4, which was previously registered under FIFRA on February 4, 1957. Velsicol requested that its registration for VEGATROL A–4D be issued on the basis of established use patterns, efficacy and safety previously established under FIFRA. Its proposed label and directions for use are substantially identical to plaintiff's registered label and directions for use of DMA–4.

Plaintiff filed a claim against the application of Velsicol on August 6, 1974. Subsequently, VEGATROL A–4D was registered. Dow then requested the EPA to inform it of the identity of each item of data which the EPA relied upon in registering this product, but defendant has not yet informed Dow of such data.

The history of the DYANAP application and of the VEGATROL A–4D application illustrate some of the difficulties that plaintiff has encountered when seeking to avail itself of rights guaranteed to it under Section 3(c)(1)(D) of FIFRA. Plaintiff presented the Court with evidence of numerous other instances in which the Administrator apparently has used and considered information, research and test data submitted by plaintiff to the EPA in support of applications for registration and has issued such registrations in reliance thereon, without giving plaintiff any specific notice of such applications, without obtaining plaintiff's permission, and without requiring any

of the applicants to obtain plaintiff's permission or to make any offer directly to plaintiff to pay reasonable compensation to plaintiff for producing such data. In some of these instances, plaintiff did not file claims, pursuant to the "Interim Policy Statement", for either compensation or for non-consideration of confidential information, because of the difficulty and near impossibility of complying with the claims procedures set forth in the Interim Policy Statement. In addition, there are currently some forty pending applications for registration under FIFRA which may rely on data regarding which plaintiff has a claim for compensation or for non-consideration of confidential information under Section 3(c)(1)(D).

The Court also heard testimony relating to the Agency's procedure for the reregistration of pesticides containing certain active ingredients, particularly 2, 4–D. The plaintiff contends that it supplied the supportive data for 2, 4–D originally to the EPA, and that the Administrator of the EPA has failed to cite that data in a "guidance package bibliography" used for reregistration purposes, thus depriving the plaintiff of deserved compensation as guaranteed by Section 3(c)(1)(D) of FIFRA.

On April 13, 1976, plaintiff received a "Notice of Call-In" for 2, 4–D products containing less than 60% 2, 4–D as an active ingredient. Pursuant to the Notice of Call-In, all applications for reregistration of pesticide products containing 2, 4–D in the above concentrations were required to be submitted to the EPA within 60 days of receipt. Plaintiff submitted its application for reregistration of its 2, 4–D products in Batch 23–003 on June 9, 1976, which application has not yet been approved.

Included in the reregistration guidance package accompanying the "Notice of Call-In" relating to reregistration of 2, 4–D products are guidance package bibliographies which purport to list all the data requirements for reregistration of the products called in. The guidance package bibliographies do not require any data to establish a tolerance for residues on food crops. The reregistration package also contains use instructions for 2, 4–D, without specifying the data on which such are based. It appears that the tolerances for use of 2, 4–D and the use instructions contained in the reregistration package are based upon information originally submitted by Dow, much of which has been submitted since January 1, 1970. Dow's permission was not sought for any consideration and use of its data that was used to support the directions for use contained in the reregistration package. Likewise, a registrant seeking reregistration of any 2, 4–D product is not required by the Administrator to offer to pay reasonable compensation to plaintiff for any data which plaintiff has submitted to the Administrator.

Regarding plaintiff's claim in Count One, the difficulties encountered by plaintiff in seeking to avail itself of its rights under Section 3(c)(1)(D) are a result primarily of the method of application for registration set forth in paragraph 2(c) of the "Interim Policy Statement" (38 Fed.Reg. 31862, November 19, 1973). A 2(c) application proceeds on the basis of use patterns, efficacy and safety as previously established, and, as such, necessarily involves the use and consideration of data previously submitted by others. Such data is used and considered by the Administrator, though, without actual identification of which data is being relied upon and without an offer to pay compensation which is directed specifically to whomever may have submitted the data originally. Both the data being considered and the ownership of the data is left in doubt, thereby making it difficult or impossible to determine both the right to compensation and whether the registration was granted based upon data considered by its owner to be confidential and exempt from consideration.

■ Section 3(c)(1)(D), as enacted, guarantees certain substantive rights over which the Administrator has no discretion. The section provides in part:

> ". . . data submitted on or after January 1, 1970, in support of an application shall not, without permission of the

applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall have first offered to pay reasonable compensation for producing the test data to be relied upon and such data is not protected from disclosure by section 10(b)."

The plain meaning of Section 3(c)(1)(D) is that the Administrator is prohibited from consideration or use of data in support of another's application for registration unless certain conditions are first met. Those conditions are either the original applicant's permission or an offer to pay reasonable compensation accompanied by a determination that the data to be considered is not protected by Section 10(b). It is uncontroverted that plaintiff has not consented to any use or consideration of data originally submitted by it.

■ Neither the provision for compensation nor that for nonconsideration of data protected by Section 10(b) can have any meaning or chance of actual application without specific delineation and identification of the data which is to be used to support an application for registration. Specific identification is required in order to establish the data involved and the ownership of the data. Without specific delineation, the applicant who originally submitted the data in support of its application for registration is unable to make a meaningful determination of the amount of compensation which would be reasonable. See *Mobay Chemical Corporation v. Train*, 394 F.Supp. 1342, 1347, fn. 6 (W.D.Mo.1975). Likewise, without such specific identification and delineation, the original applicant and the Administrator are unable to make a meaningful determination whether consideration is sought in support of another's application for registration of data which is protected from consideration under Section 3(c)(1)(D) and 10(b).[1]

■ The statutory scheme also requires that the offer of reasonable compensation

be made directly to the original applicant. *Mobay Chemical Corporation v. Train*, 394 F.Supp. at 1347.

■ The 2(c) method of application for registration under the Interim Policy Statement does not satisfy these conditions for use or consideration of data submitted originally by plaintiff. Instead, plaintiff is placed in the position of a claimant, with there being procedural limitations within which any claim must be made. By implementation of this procedure, the Administrator has failed to follow the statutory scheme provided by Congress in enacting Section 3(c)(1)(D). See *Mobay Chemical Corporation v. Train*, 394 F.Supp. at 1348. Moreover, the procedural maze which has been implemented is unduly burdensome and places unreasonable requirements upon any "claimant" seeking protection or compensation provided by Section 3(c)(1)(D).

■ Although the "Modified Interim Policy Statement" purported to eliminate the 2(c) method of application for registration, it is clear that the EPA is continuing to use this method and will continue to use the 2(c) method to the irreparable prejudice of plaintiff unless enjoined by this Court. Plaintiff's exhibit No. 74 establishes that the Agency's employees are continuing to rely upon the 2(c) method of application, and Mr. Edward Gray of the EPA, in evasive testimony, indicated that the 2(c) method "may" still be used.

The defendant has proposed certain regulations which would eliminate much of the current abuse. Under the recently-proposed regulation to "implement" Section 3(c)(1)(D), which will appear as 40 CFR 162.9, applicants who have not obtained the consent of the owner of the data on which they desire to rely will be required to submit the following statement in conjunction with their application (40 CFR 162.9(b)(4)(iii)):

The undersigned hereby offers to pay, to the extent provided in Section 3(c)(1)(D) of FIFRA, as amended, and the regula-

1. In the "Modified Policy Statement", 41 Fed. Reg. at 3341, a "claimant" has 30 days within which to assert a claim that information is exempt from consideration in support of another's application for registration because it is protected under Section 10(b).

tions thereunder, compensation in the amount and on the terms determined by the Administrator or the appropriate federal court to be reasonable under the circumstances for use of the data described above to support this application. The undersigned further certifies that this offer has been made directly to each person known by the undersigned to be the person(s) from whom EPA received this data for the first time in support of an application on or after January 1, 1970, thereby providing them notice of his intent to rely on the data.

Defendant has conceded that these regulations do not yet have the force or effect of law. Lacking such, and lacking any guarantee of their enactment, and inasmuch as the Agency has shown by its past conduct that it does not even consider itself bound by its own policy statement in which the 2(c) method of application was supposedly eliminated, the Court is unable to conclude that plaintiff must rely on procedures which are yet to be developed.

For these reasons, the Court finds that plaintiff is likely to succeed on the merits on the issues raised in Count One of the Amended Complaint. For these same reasons, the Court finds a clear case of irreparable injury to plaintiff. Plaintiff has spent millions of dollars and has expended substantial time, effort, and expertise in the development of data in support of its applications for registration of pesticides. Unless a preliminary injunction issues, plaintiff's right to compensation on both the forty pending applications for registration and any application which may be filed would be irreparably prejudiced by the procedures presently employed by the Administrator. Likewise, plaintiff's right to have excluded from consideration any data which it has submitted and which is protected under Section 10(b) would be defeated unless the Administrator is required to identify the data on which it is relying.

The balance of injuries and the public interest also favor the grant of this preliminary relief. The preliminary relief can be framed consistent with the 1975 amendment to FIFRA in Section 12 of Pub.L.No. 94–140, which states that registration will not be delayed pending the determination of reasonable compensation. The Court will impose no prohibitions regarding the delay of registration pending the determination of compensation. Rather, the only limitations will be those as already set forth in Section 3(c)(1)(D) as conditions precedent to the consideration of another's data.

Defendant also asserts that the grant of preliminary relief would unduly disrupt the administrative procedure and place an undue burden on other applicants. This argument is refuted by the very language of Section 3(c)(1)(D). As was stated by the Court in *Mobay Chemical Corporation v. Train,* 394 F.Supp. at 1348, 1349, fn. 7, in response to the same argument by defendant:

"If that is so as a result of the provisions of subsection 3(c)(1)(D), the remedy for this situation lies with the Congress, and not this Court. It must also be noted that Congress enacted subsection 3(c)(1)(D) over the opposition of the EPA. See 1972 U.S.Code Cong. and Admin. News, Vol. 3 pp. 3993 et seq., and p. 4043. Further, the provisions of this subsection do not appear to place any great burden on the applicant desiring to rely upon test data submitted by other individuals. All that is required is that the applicant determine what data it seeks to rely upon, and then either secure permission to rely upon such data or make the required offer of compensation for the use of such data to the prior applicant. Should an applicant not desire to follow this procedure, he has a clear alternative: he may develop and submit sufficient test data on his own."

Further, the defendant has made no showing that the registration procedure would actually be substantially effected by the grant of preliminary relief. Accordingly a preliminary injunction will issue on Count One.

The grant of preliminary relief will contain only a limited provision for the protection of trade secrets or other confidential

matter under Section 10(b) from being considered in support of another's application for registration. The Administrator will be prohibited from consideration of any data submitted by plaintiff unless that data is first specifically identified and the applicant offers to pay to plaintiff reasonable compensation for the consideration of such data. Since none of the applications for registration presently before the Court have met this requirement, the plaintiff is not threatened with irreparable harm in this regard.

The limited provision will be made only in regards to applications for registration which are not presently before the Court, that is, applications which meet the requirements of Section 3(c)(1)(D). Strictly speaking, the limitation is not in regards to the applications *per se,* but is in regards to the procedure the Administrator has implemented if plaintiff is to preserve its right under Section 10(b). That procedure is prescribed by the Modified Interim Policy Statement, 41 Fed.Reg. at 3341, which states as follows:

> "The administrator shall allow a reasonable period of time (not less than thirty days) after publication of the *Federal Register* notice for inquiries and any assertion of claims that data are entitled to protection under Section 10. The Administrator shall treat a request to rely on data with respect to which a claim of confidentiality under Section 10 is made in the same manner as a request for disclosure of such data. Thus, in such

circumstances, the Administrator shall determine as quickly as possible whether the data are subject to protection under Section 10 and shall notify the claimant and applicant of his determination. If the Administrator determines that the data are not subject to protection under Section 10, the application will not be approved in reliance upon such data until the claimant has been afforded an opportunity to seek judicial review of the determination as set forth in Section 10(c) [2] of the FIFRA."

The procedure set forth above adequately protects plaintiff's rights prior to the institution of suit except that the requirement that Section 10 claims must be made within thirty days is unreasonable. It is unreasonable initially because the statute requires the Administrator to determine whether information is protected under Section 10 and does not authorize the Administrator to rely only upon "claims" in this regard.[3] It is also unreasonable because it is almost impossible to submit the required "claim" within the thirty day period. Finally, it is an arbitrary and capricious limitation, inasmuch as the Administrator allows sixty days for compensation "claims." Accordingly, the Court will require that the Administrator allow sixty days, after plaintiff has received notice specifically identifying information on which an applicant seeks to rely, in which plaintiff may make any claim that the information is protected from consideration by reason of Section 10(b) and 3(c)(1)(D).

---

**2.** Section 10(c) of FIFRA, 7 U.S.C. § 136h(c) provides: "If the Administrator proposes to release for inspection information which the applicant or registrant believes to be protected from disclosure under subsection (b) of this section, he shall notify the applicant or registrant, in writing, by certified mail. The Administrator shall not thereafter make available for inspection such data until thirty days after receipt of the notice by the applicant or registrant. During this period, the applicant or registrant may institute an action in an appropriate district court for a declaratory judgment as to whether such information is subject to protection under subsection (b) of this section."

**3.** It would appear that the statute contemplates the Administrator making an immediate determination of whether information is protected by 10(b) at the time such information is submitted. See the entirety of 7 U.S.C. §§ 136h and 136(a)(2). This the Administrator has not done. If such a procedure were followed, the 10(b) status of information would be resolved and not at issue in any application for registration. Information not protected by 10(b) would be disclosed, thereby readily informing applicants of which information is available for reliance. The problem of specific identification would thereby be easily resolved, as the applicant would be in an informed position to select data among that available to support its application.

In regards to plaintiff's claim in Count Two, the Administrator has promulgated regulations on July 3, 1975, appearing at 40 CFR 162, which designate at 40 CFR 162.-8(c) the requirements for reregistration of a pesticide under FIFRA.

The regulation which appeared in July, 1975 establishes different requirements for the submission of data by applicants for new registration as opposed to reregistration. Plaintiff asserts that these differences in data requirements are contrary to law. Defendant, however, asserts that the reregistration data requirements are lawful; that plaintiff cannot prevail on the merits of this matter; and that the equitable relief plaintiff seeks should be denied for that reason.

Plaintiff's argument may be summarized as follows: (1) FIFRA and FEPCA allegedly require the Administrator to require a reregistration applicant to submit or cite for the Administrator's consideration the same amount and kinds of test data that would be required to support an application for a new product registration; (2) the test data that the administrator necessarily would have to consider in order to register new products containing certain active ingredients is, according to plaintiff, data developed and submitted by plaintiff over many years, which is protected by FIFRA Section 10(b), or which, if used, would afford plaintiff compensation rights under Section 3(c)(1)(D). From this plaintiff concludes that the Administrator, by failing to condition reregistration of currently-registered products on the submission or citation of plaintiff's entire data base, violates Section 3(c)(1)(D) to plaintiff's detriment.

It is clear that in requiring the reregistration of all pesticides previously registered that Congress intended to require the same standards for reregistration as for registration. Section 2(z) of FEPCA (FIFRA of 1972), 7 U.S.C. § 136(z), defines the term "registration" to include reregistration. The statute does not otherwise distinguish between registration and reregistration except in Section 4(c)(2) of FEPCA, 7 U.S.C. § 136, note, which provides that the Administrator ". . . shall register and reclassify pesticides registered under the provisions of the Federal Insecticide, Fungicide, and Rodenticide Act prior to the effective date of the regulations promulgated under subsection (c)(1)." [4]

Under this statutory scheme, defendant had two years to promulgate regulations governing the registration of pesticides under FEPCA. After such regulations were adopted, defendant was required to reregister all of the previously registered pesticides. Section 4(c)(1), read in conjunction with Section 4(c)(2), indicates that it was Congress' intent that the Administrator reregister the previously registered pesticides under the same standards adopted for new registrations under FEPCA.

This construction of the statute is buttressed by the legislative history of FEPCA. H.R.Rep.No.92–511, 92nd Congress, 1st Sess., at p. 18,[5] provides an explanation of Section 4(c)(2) of FEPCA, again indicating the Congressional intent of reregistering pesticides on the same basis as registration under the act.

Thus, while the Administrator may have been provided with discretion in determining the amount and nature of data required to meet the standards of FEPCA, the Administrator was given no discretion in FEPCA to distinguish between the data required for registration and that required for reregistration.

The Administrator has partially acknowledged its non-compliance in this regard and has suggested a procedure for coming to ·

---

4. Subsection (c)(1) directs the Administrator to promulgate regulations for registration of pesticides not previously registered.

5. "The following exceptions to immediate effectiveness of amendments enacted are made:

(1) All new registrations of pesticides shall be in accordance with regulations governing registration and classification promulgated within two years of enactment of this Act. (2) All registrations existing prior to promulgation of the above regulations shall be reregistered and classified in *accordance with those regulations* after two years but within four years of enactment of the Act. (Emphasis supplied.)"

compliance. In the preamble to the July 3, 1975, *Federal Register* notice, the Administrator states:

"EPA realizes that full compliance with the data requirements imposed on new registrations would be desirable for reregistration as well. By October, 1976, however, EPA must reregister in excess of 30,000 pesticide products. It would be administratively impossible to require all of these products to satisfy the data requirements for new registration. Five year renewals of registration, however, will be processed on a staggered basis; it is at this juncture that the then current data requirements for new registration will apply to all products previously registered by the Agency."

After the Administrator's enactment of the regulations governing reregistration, Congress passed Pub.L.No. 94–140, which in Section 4 allowed the Administrator an additional year to complete the reregistration process, and which in Section 12, specifically stated that the provision for compensation under Section 3(c)(1)(D) ". . . shall apply with respect to all applications for registration or reregistration submitted on or after October 21, 1972." The specific reference in Section 12 of Pub.L.No. 94–140 to the applicability of Section 3(c)(1)(D) to the reregistration process indicates a Congressional intention that at least the compensation provisions of Section 3(c)(1)(D) must become effective immediately to all reregistration. S.Rep.No.94–452, 94th Cong., 1st Sess. (November 10, 1975) at p. 11 states:

"It should be noted that any applications granted without application of the 3(c)(1)(D) provisions, under the interpretation reflected in the Interim Policy Statement, resulted in registrations under the 1947 Act, and hence must be 'reregistered' under the 1972 amendments and the Administrator's implementing regulations. 'Reregistration' is about to commence; in accordance with Section 4 of the bill, the reregistration process must be completed by October 21, 1977. Pursuant to Section 2(z) of the Act, registration is defined to include reregistration. Accordingly, section 3(c)(1)(D) is

applicable to the reregistration process. Reregistration will therefore require subjecting persons to section 3(c)(1)(D) who received registrations after October 21, 1972, but who were not subject to the provisions of section 3(c)(1)(D) under the then-prevailing interpretation of the Administrator." U.S.Code Cong. & Admin. News.1975, pp. 1359, 1368.

Both the statute and its legislative history make it apparent that Congress did not intend to permit the Administrator to delay the full application of Section 3(c)(1)(D) to the reregistration process for an additional five years. Since the Administrator's differential treatment between applications for registration and those for reregistration is resulting in a delay in the full implementation of Section 3(c)(1)(D), the Administrator's procedure for reregistration is in violation of FIFRA, as amended.

For these reasons, the Court concludes that plaintiff is likely to prevail on the merits of its claim in Count Two. As this differential treatment thwarts plaintiff's rights under Section 3(c)(1)(D), plaintiff has made a clear showing of injury. This injury is also of a continuing nature, for so long as competitors are allowed to rely upon Dow's data in their applications for reregistration without compensation to Dow and even though the data may be protected from such reliance under Section 10(b) and 3(c)(1)(D), the plaintiff loses a definite competitive advantage which it now possesses and which is protected by Section 3(c)(1)(D). Thus, even though this injury to plaintiff may be discontinued after five years, plaintiff will suffer irremedial and, hence, irreparable injury in the interim.

It also appears that the balance of injuries favors the grant of the injunction. The injunction can be framed to cause little or no delay in the reregistration process except that delay which will occur if the Administrator or the applicant seeks reliance on data which Dow has claimed is confidential. Since the Administrator is absolutely prohibited from consideration of such data without Dow's permission unless the data is

determined to be not protected by Section 10, such delay is inherent in the provisions of the Act and should stand as no reason for rejecting plaintiff's claim for relief.[6]

There is no cause for delay in reregistration insofar as providing Dow with its right to adequate compensation. In this regard, if the applicant for reregistration seeks to rely upon data submitted by Dow, the applicant need merely identify the data and offer to pay reasonable compensation. The reregistration process need not be delayed pending the actual determination of the amount of compensation. Likewise, the Agency has presented no reason why requiring the same amount of data for reregistration as for registration would impede its ability to reregister pesticides. The Agency is well aware of those requirements, as it establishes the requirements for registration, and as it expends considerable time and effort indirectly analyzing those data requirements when developing the use instructions for pesticides to be reregistered.

Finally, public interest provides no reason against the issuance of the injunction. This preliminary relief will have no effect on environmental and health standards, for the burden will remain on the applicant for reregistration to establish the safety and efficacy of its product. It is also important to note in this regard that Congress in 7 U.S.C. § 136n(c) vested the district courts with jurisdiction "specifically . . . to *prevent*, and restrain violations" of FIFRA. See *Mobay Chemical Corporation v. Train*, 394 F.Supp. 1342, 1350 (W.D.Mo.1975).

The injunction will issue on both Counts One and Two as set forth herein.

## INJUNCTION

The Court hereby ENJOINS and RESTRAINS the defendant, his officers, agents, employees, and representatives, pending the final disposition of Counts One and Two of the Amended Complaint, or until further order of the Court, from engaging in or permitting any of the following acts unless the defendant or his officer, agent, employee, or representative shall have first obtained the express written permission of plaintiff, to wit:

*FIRST:* from registering under the provisions of FIFRA, as amended, any pesticide which has previously been registered under FIFRA where such pesticide is included within a "batch", including Batch 23–004, of which plaintiff has received or will receive a "Notice-of-Call-In", unless the application for registration of such pesticide complies with all of the data and information requirements promulgated by the Administrator under FEPCA which are required to support the registration of such a pesticide which has not been previously registered, provided, however, that the Administrator may disregard any such data or information requirement in regards to any data which the Environmental Protection Agency, the United States Department of Agriculture, or the United States Food and Drug Administration received prior to January 1, 1970, in support of any application for registration, and provided further that the Administrator may disregard any such information and data requirement as set forth herein for purposes of registration of any pesticide previously registered of which plaintiff has never submitted such required data or information in support of any application by it for registration under FIFRA or FIFRA as amended;

*SECOND:* from any further consideration, use, or reliance in support of any application for registration of a pesticide under FIFRA, as amended, regardless of whether or not such pesticide has previously been

---

**6.** The data regarding which plaintiff has made a claim of confidentiality under Section 10 is readily determinable by the Administrator in the reregistration process without requiring the Administrator to delay reregistration until Dow makes such a claim. Under Section 10(a) of FIFRA, as amended, 7 U.S.C. § 136h(a), an applicant may clearly mark data submitted which in the applicant's opinion is protected by Section 10(b). Dow has followed this practice. In preparing the use instruction regarding reregistration of products containing 2, 4–D as an active ingredient, the Agency was well aware that it was considering data submitted by Dow which Dow had marked as confidential.

registered under FIFRA, of research or test data submitted by plaintiff on or after January 1, 1970, to the defendant, the United States Department of Agriculture, or the United States Food and Drug Administration, unless the Administrator or the applicant seeking such consideration, use, or reliance has specifically identified to plaintiff the data or information involved, and unless such applicant has offered to pay to plaintiff reasonable compensation to the extent provided in Section 3(c)(1)(D) of FIFRA, as amended;

THIRD: from any further consideration, use, or reliance in support of any application for registration of a pesticide under FIFRA, as amended, where such pesticide has not previously been registered under FIFRA, of research or test data submitted by plaintiff on or after January 1, 1970, to the defendant, the United States Department of Agriculture, or the United States Food and Drug Administration, unless sixty days after plaintiff has received notice specifically identifying the data or information involved, plaintiff has not made a claim to the defendant that such information or data is protected from consideration by reason of Section 10(b) and Section 3(c)(1)(D) of FIFRA, as amended, or unless subsequent to such a claim the information or data has been determined by defendant or by an appropriate Court to be not subject to protection under Section 10 of FIFRA, as amended, in accordance with the procedures set forth by defendant in the "Modified Interim Policy Statement";

FOURTH: from any further consideration, use, or reliance in support of any application for registration of a pesticide under FIFRA, as amended, where such pesticide has previously been registered under FIFRA, of research and test data submitted by plaintiff on or after January 1, 1970, to the defendant, the United States Department of Agriculture, or the United States Food and Drug Administration, which research or test data has been clearly marked by plaintiff as pertaining to trade secrets or commercial or financial information as provided by 7 U.S.C. § 136h(a), unless the same has been determined by defendant or. by an appropriate Court to be not subject to protection under Section 10 of FIFRA, as amended, in accordance with the procedures set forth by defendant in the "Modified Interim Policy Statement."

This injunction shall be effective upon the filing by plaintiff with the Clerk of this Court security in the sum of two thousand dollars ($2,000.00), pursuant to F.R.Civ.P. 65(c).

IT IS SO ORDERED.