**ELI LILLY AND COMPANY, Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Lee M. Thomas, Administrator, Environmental Protection Agency,\* Aceto Chemical Company, Inc., Defendants.**

**No. IP 83–1862–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 26, 1985.

---

\* The Court notes the departure of William D. Ruckelshaus as Administrator of the EPA, hence the change in caption. Rule 25(d), F.R.Civ.P.

J.B. King, Indianapolis, Ind., for plaintiff.

Robert McLaughlin, Office of Gen. Counsel, U.S. E.P.A., Lawrence R. Liebesman, U.S. Dept. of Justice, Washington, D.C., for defendants EPA and Thomas.

Gary K. Harris, Washington, D.C., George A. Rubin, Indianapolis, Ind., for Aceto.

## ENTRY

DILLIN, District Judge.

This cause is before the Court upon the motions of the Environmental Protection Agency (EPA) and the Aceto Chemical Company, Inc. (Aceto) to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the following reasons, those motions are granted in part and denied in part.

*Memorandum of Law*

Eli Lilly and Company (Lilly) filed this lawsuit against Aceto, the EPA, and the EPA's administrator. Lilly has alleged that this action arises under the Constitution of the United States and the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*, as amended. Lilly further alleges that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 7 U.S.C. § 136n(c).

The EPA and Aceto have sought to have this action dismissed through motions filed on May 21, 1985, and June 5, 1985, respectively. This Court is required to dismiss an action whenever it appears by suggestion of the parties, or otherwise, that the Court lacks jurisdiction of the subject matter. Rule 12(h)(3), F.R.Civ.P.

## COUNT I

Count I of Lilly's complaint alleges that the EPA, in issuing and maintaining registrations of certain pesticide products of Aceto, considered health, safety, and efficacy data submitted earlier by Lilly, without Lilly's permission and without requiring Aceto to offer to compensate Lilly for the use of its data. Lilly also contends that the EPA considered previously submitted Lilly trade secret data in support of the pertinent Aceto registrations, without Lilly's permission. Finally, Lilly alleges that the EPA relied on Lilly research data to issue and maintain the pertinent Aceto registrations without determining that the relevant Lilly and Aceto products are analytically comparable (i.e., identical or substantially similar or different only in ways that would not significantly increase the risk of unreasonable adverse effects on the environment). Lilly makes no constitutional challenges to FIFRA in this count of its complaint, but rather contends that the above

alleged EPA actions violate the statute itself.

Of course, on a motion to dismiss, the factual allegations of the complaint are to be taken as true, the complaint being construed in the light most favorable to the plaintiff. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977).

*Subject Matter Jurisdiction*

■ It is not enough for Lilly to rely simply on § 1331 to establish subject matter jurisdiction against the EPA as to this count; when consent to sue the United States is granted, the precise terms, conditions, and qualifications of such consent must be scrupulously followed. *Coleman v. United States Bureau of Indian Affairs*, 715 F.2d 1156, 1161 (7th Cir.1983). Consequently, Lilly brings this suit also pursuant to 7 U.S.C. § 136n(c). The defendants characterize Lilly's action as a "citizen suit," and maintain that, as such, it must be dismissed.

■ Defendants are correct that, despite the apparently clear language of § 136n(c), private citizens, acting as such, may not bring direct actions against the EPA in order to seek enforcement of FIFRA. This is because Congress considered and explicitly rejected amendments which would have provided for classic "citizen suits," including suits by private citizens against the EPA Administrator for failure to perform nondiscretionary duties or for failure to investigate and prosecute violations. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983) (holding there to be no private right of action under FIFRA); *see also In Re Agent Orange Product Liability Litigation*, 635 F.2d 987, 991 n. 9 (2nd Cir.1980) (affirming district court determination that there is no private right of action under FIFRA), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

If Lilly were bringing this action only in its capacity as a private citizen concerned, as generally all citizens are, with the potential adverse environmental impact of certain pesticide misuse, then the action would have to be dismissed as a congressionally prohibited citizen suit. Lilly, however, is not bringing this suit as simply a private citizen, but rather as a *FIFRA registrant.* Such distinctions are not unknown to the law under FIFRA. In *Kelley v. Butz*, 404 F.Supp. 925, 940–41 (W.D.Mich.1975), the court distinguished between a group of private citizens and a state Attorney General acting for all of the people of Michigan, in exercising jurisdiction over a suit brought by the latter against the EPA under FIFRA, despite the bar it recognized to exist against private citizen suits.

Without necessarily accepting the distinction made in *Kelley, supra,* we believe that a very clear distinction can, and must, be made between a suit brought by a private citizen (or group of citizens), and a suit brought by a registrant under the Act which seeks to enforce certain FIFRA provisions which uniquely concern that registrant, *as* a registrant.

Count I constitutes such a "registrant suit." The issue now to be decided is whether a registrant suit, as opposed to a citizen suit, is permitted by FIFRA, or more specifically by § 136n(c).

The Court begins with the well settled principle that "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 136n(c) provides that: "The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this subchapter."

Based upon the plain wording of this statute, it would seem clear that this Court is vested with jurisdiction over Lilly's Count I claims. It is so clear, in fact, that other courts, without substantive analysis, have exercised subject matter jurisdiction over suits brought by registrants which statutorily challenge certain EPA actions or inactions as violative of FIFRA. *Amchem Products, Inc. v. G.A.F. Corp.*, 594

F.2d 470 (5th Cir.1979); *Rohm & Haas Co. v. E.P.A.*, 525 F.Supp. 921 (E.D.Pa.), *aff'd* 651 F.2d 176 (3d Cir.1981); *Mobay Chemical Corp. v. Costle*, 447 F.Supp. 811, 814 n. 2 (W.D.Mo.1978), *appeal dismissed*, 439 U.S. 320, 99 S.Ct. 644, 58 L.Ed.2d 549 (1979), *modified*, 517 F.Supp. 252 (W.D.Pa. 1981), *aff'd sub nom. Mobay Chemical Corp. v. Gorsuch*, 682 F.2d 419 (3d Cir.), *cert. denied*, 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); *Dow Chemical Co. v. Train*, 423 F.Supp. 1359, 1363 (E.D.Mich. 1976).

However, in well argued briefs in this case, defendants urge that this Court lacks jurisdiction pursuant to § 136n(c) over this action, despite that provision's apparent straightforward grant of subject matter jurisdiction. We have been persuaded to look beyond the face of the statute to determine if Lilly is jurisdictionally barred from pursuing its Count I claims in this action.

The Supreme Court has identified four factors which are relevant in determining whether a private remedy is implicit in a statute which does not provide one. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

██ is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ...? [2] is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... [3] is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... [4] is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (emphasis in original, citations omitted).

Lilly, as a registrant, is one of a class for whose especial benefit FIFRA was enacted. *See e.g., S.Rep. No.* 838, 92d Cong., 2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Ad.News* 3993, 3998 ("Giving applicants proprietary rights in their test data will encourage applicants to spend the money necessary to test their products fully and assure their safety."). Of course, it cannot be said that FIFRA was not also especially enacted for the benefit of all private citizens in general, including nonregistrants. *Id.* ("All of these provisions are designed to provide for tighter control of pesticide registration and use to insure protection to man and the environment.") Just because all of mankind meets the first *Cort* factor, does not mean that pesticide registrants do not also meet it. In fact, this first factor may even be more favorably applied to FIFRA registrants because they constitute a much more particularized class than does "man." At any rate, suits by private citizens have been prohibited under FIFRA primarily by the operation of the second *Cort* factor, to which we now turn.

Our review of FIFRA and its legislative history discloses no indication, either explicit or implicit, of an intention on the part of Congress to deny registrants under that Act a private remedy such as that sought in Count I of this action. Congress did reject a "citizen suits" amendment due, in great part, to its concern that such an amendment may encourage suits by professional litigants. *See S.Rep. No.* 838 (Supplement), 92d Cong.2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Ad.News* 3993, 4023, 4060. Lilly is not such a professional litigant. Registrants register their products so that they may sell them, not in order to bring lawsuits against the EPA. The Agency's concern, that environmental groups will register products under FIFRA so that they may sue under the Act, is misplaced. Initially, the cost would be prohibitive. Moreover, even if the Sierra Club did develop and register a pesticide effective against Johnson grass, it could only bring claims under § 136n(c) concerning issues unique to it as a registrant regulated by the statute. It would still not be able to bring suit alleging a generalized environmental grievance.

On the other hand, the legislative history does give some indication of a Congressional intent to permit registrant suits. In

considering the 1975 amendments to FIFRA, Congress noted the litigation arising from the "mandatory licensing" and trade secret provisions of that Act. *S.Rep. No.* 452, 94th Cong. 1st Sess. p. 9, *reprinted in* 1975 *U.S.Code Cong. & Ad.News* 1359, 1367. Of course, such litigation would concern and be brought by registrants. Despite its express knowledge of the existence of registrant suits, Congress did not amend that statute to preclude them, nor even informally indicate that they were improper.

■ At least one case in which a court *explicitly* exercised subject matter jurisdiction under § 136n(c) in a registrant suit alleging violations of FIFRA, was decided before the 1978 amendments to that Act. *Dow Chemical Co. v. Train*, 423 F.Supp. 1359, 1363 (E.D.Mich.1976). When Congress extended and otherwise amended FIFRA in 1978, it did not see fit to amend § 136n(c) so as to prevent it from being so used as a basis for subject matter jurisdiction over registrant suits. Congress is presumed to be aware of a judicial interpretation of a statutory provision, and it can be inferred that it adopts that interpretation when it re-enacts a statute without changing the wording of that provision. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). Congress in 1978, as it had been in 1972, *supra*, was expressly aware of lawsuits, such as *Dow*, that had been generated by FIFRA's data consideration provisions. *Thomas v. Union Carbide Agricultural Prod. Inc.*, — U.S. —, —, 105 S.Ct. 3325, 3329, 87 L.Ed.2d 409 (1985) ("The 1978 amendments were a response to the 'logjam of litigation that resulted from controversies over data compensation and trade secret protection.'"), quoting *S.Rep. No.* 334, 95th Cong., 2d Sess. 3 (1977).

The second *Cort* factor, as the first, favors the maintenance of a registrant suit.

■ Thirdly, an action by a registrant seeking to compel the EPA to comply with the compensation and arbitration requirements of FIFRA is consistent with the underlying legislative purpose of those provisions. Through the FIFRA compensation and arbitration scheme, Congress has sought to encourage registrants to conduct the enormously expensive pesticide health, safety, and efficacy tests by assuring them of some control over the use of the data generated by those tests.

These provisions reflect Congress' desire to provide registrants with some control over and protection of their data, while avoiding the creation of a complete monopoly for the original developer of the data. This registrant suit simply asks the EPA to enforce allegedly violated FIFRA provisions, which Congress set in place to encourage pesticide registrations, and the research that requires, by protecting registrants from undue financial and competitive injury. The Supreme Court has stated that "when the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision." *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 6, 88 S.Ct. 651, 654, 19 L.Ed.2d 787 (1968).

This Court believes that the FIFRA provisions, which Lilly claims in Count I to have been violated, were enacted to give FIFRA registrants certain absolute minimum protection of their data. Therefore, the maintenance of a registrant suit alleging the lack of a compensation offer, the misappropriation of trade secret data, and failure to make a determination of "analytical comparability," is consistent with the underlying purposes of FIFRA's legislative scheme within the meaning of the third *Cort* factor.

As to the fourth *Cort* factor, a registrant suit under FIFRA is clearly not one traditionally relegated to state law. Jurisdiction to enforce, prevent, and restrain violations of the Act is specifically vested in the district courts of the United States.

■ Based on all of the foregoing, included the plain wording of the instant statutory provision and the application of the factors of *Cort v. Ash, supra*, the

Court holds that it has jurisdiction over Count I of this cause of action filed by Lilly, as a FIFRA registrant, under § 136n(c) of that Act.

*Exhaustion of Administrative Remedies*

■ Title 7 U.S.C. § 136n(a) states that: "Except as is otherwise provided in this subchapter Agency refusals to cancel or suspend registrations or change classifications not following a hearing and other final Agency actions not committed to Agency discretion by law are judicially reviewable in the district courts." Defendants contend that because it is "Agency *refusals* to cancel or suspend registrations ..." that are "judicially reviewable in the district courts" under this provision, Lilly is required to administratively request the EPA to cancel or suspend the Aceto registration before its *refusal* to do so is possible, and judicial review thereof is then permissible.

Although defendants present well reasoned and plausible arguments in support of their position that certain administrative remedies are a prerequisite to a lawsuit jurisdictionally based upon § 136n(a), we need not consider them because this suit's jurisdictional foundation is § 136n(c). As discussed, *supra*, Lilly, acting as a FIFRA registrant, may bring suit directly under § 136n(c), which neither explicitly nor implicitly requires any exhaustion of administrative remedies.

The Court notes that private citizens (other than registrants acting as registrants) apparently may bring suit under § 136n(a) to try to obtain the suspension or cancellation of a registration, given that they have exhausted their administrative remedies, if in fact any are required under that provision. *See S.Rep. No.* 838, 92d Cong., 2d Sess., *reprinted in* 1972 *U.S. Code Cong. & Ad.News* 3993, 4003 (Senate Agriculture and Forestry Committee describing this provision as one which "would authorize third parties to petition for cancellation or suspension and obtain judicial review."); *see also S.Rep. No.* 838 (Supple-

ment), 92d Cong., 2d Sess., *reprinted in* 1972 *U.S. Code Cong. & Ad.News* 4023, 4060 (Senate Agriculture and Forestry Committee indicating that availability of participation by third-parties in administrative procedures and judicial review obviates need for a "citizen suit" provision).

Defendants urge that we must dismiss Count I of Lilly's complaint for failure to exhaust administrative remedies in light of the recent case of *Merrell v. Thomas*, 608 F.Supp. 644 (D.Or.1985). Even if we were bound to follow *Merrell* as precedent, which of course we are not, that case in no way detracts from our holding that Lilly has no administrative remedies it need exhaust prior to its bringing suit as a registrant.

*Merrell*, a Lincoln County, Oregon resident, brought an action to set aside the right-of-way use registrations of certain pesticides which, apparently, were about to be sprayed in Lincoln County. *Id.* at 645, 647. Judge Burns, in finding that Mr. Merrell had failed to exhaust his administrative remedies under FIFRA prior to commencing his action for cancellation or suspension of the registrations, stated: "If plaintiff has reason to believe that these pesticides may cause unreasonable adverse effects on the environment, he may petition the Administrator to cancel or suspend their registrations." *Id.* at 647.

*Merrell* was clearly suing in his capacity as a private citizen. As such, he was required by the Oregon federal district court, quite correctly we believe, to comply with certain administrative procedures under § 136n(a). Lilly, however, when suing as a FIFRA registrant, may bring suit directly under § 136n(c) without having to exhaust any administrative remedies, as discussed, *supra.*

## COUNT II AND AMENDED COUNT IV

■ In Count II of its complaint, Lilly challenges the EPA's issuance and maintenance of the Aceto registrations (in alleged reliance upon Lilly's health, safety, and efficacy data and without its permission) as being unlawfully predicated upon a statu-

tory compensation procedure which, Lilly contends, denies a forum for adjudication of Lilly's rights as required by Article III of the Constitution of the United States.

Amended Count IV alleges that Lilly was compelled either to agree to participate with, and make its data available to, Aceto under the provision of 7 U.S.C. § 136a(c)(2)(B), or to permit the EPA to use Lilly's data in support of the Aceto registrations without compensation to Lilly. Lilly contends that § 136a(c)(2)(B) is unconstitutional in that its binding arbitration provisions are an impermissible intrusion upon the powers of the judiciary in violation of Article III of the United States Constitution.

The proper disposition of these counts has been made clear by the Supreme Court's recent decision of *Thomas v. Union Carbide Agricultural Prod. Co.,* —— U.S. ——, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

Lilly has alleged that its data has been considered in support of other registrations and that it is as of yet uncompensated for that use. Numerous follow-on registrations have been issued under the FIFRA data consideration procedures which are now in place. Under these circumstances, Lilly's claims under these two counts are ripe. *See Union Carbide,* —— U.S. at ——, 105 S.Ct. at 3333. More importantly, *Union Carbide* upheld the constitutionality of FIFRA's compensation and arbitration scheme under Article III. *Id.* at —— ——, 105 S.Ct. at 3337–39 (page 24 of the slip opinion of this case, containing the Court's holding, was omitted from the United States Law Week report).

Because it now appears that Lilly can prove no set of facts in support of its claims under Count II and Amended Count IV, challenging the constitutionality of FIFRA under Article III, which would entitle it to relief, these counts will be dismissed for failure to state a claim. *See Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1332 (7th Cir.1977), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1978).

## AMENDED COUNT III

Lilly alleges in Amended Count III that, at the time EPA issued its registrations of Aceto Tech and Aceto EC (January 11 and November 14, 1973, respectively), Lilly was statutorily entitled to certain protections and compensation rights which were denied it by the EPA's consideration of Lilly research data in support of the issuance and maintenance of the Aceto registrations. Specifically, Lilly contends that such use of its data by the EPA, without Lilly's permission and without providing notice to Lilly of the consideration of Lilly data or the opportunity for a determination of a claim for compensation, is unlawful and constitutes a deprivation of property rights without due process of law in violation of the Fifth Amendment to the Constitution of the United States.

 Initially, we note that Lilly's constitutional challenges to the EPA's alleged actions and inactions, as set forth in Amended Count III, are ripe for our consideration. The Due Process Clause of the Fifth Amendment requires that due process be afforded *before* an individual is deprived of property. *Muscare v. Quinn,* 520 F.2d 1212, 1215 (7th Cir.1975) (quoting *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975)). This is not the case with the Fifth Amendment Taking Clause which requires only that compensation be rendered, but not necessarily before the taking occurs. *Ruckelshaus v. Monsanto Co.,* —— U.S. ——, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984). Thus, while an action brought under the Taking Clause would be premature until the plaintiff has exhausted all avenues available to it for compensation, *Monsanto,* 104 S.Ct. at 2878, constitutional challenges to actions or inactions of the EPA brought under the Due Process Clause are ripe when the factual allegations of the complaint make it appear that the plaintiff may have been deprived of a property right without being afforded due process of law.

No successful constitutional challenge can be made by Lilly to the EPA's use of

Lilly research data which was submitted to the EPA by Lilly either prior to the 1972 FIFRA amendments or after the 1978 FIFRA amendments.

Prior to the 1972 amendments, neither FIFRA nor any other provision of law guaranteed confidentiality to submitters of pesticide research data, or, for that matter, authorized the EPA to disclose such data. *See Monsanto,* 104 S.Ct. at 2876. Property rights in a trade secret are extinguished when a company discloses its trade secret to persons not obligated to protect the confidentiality of such information. *Thomas v. Union Carbide Agricultural Prod. Co.,* —— U.S. ——, ——, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985). Because Lilly thus had no property interest in any data it submitted to the EPA under FIFRA before the effective date of the 1972 amendments, Lilly can make no successful due process challenge to the EPA's use of its research data submitted to the EPA prior to October 22, 1972 (the effective date of the 1972 amendments, *Monsanto,* 104 S.Ct. at 2876 n. 12).

Likewise, Lilly cannot claim that its research data, submitted to the EPA after the effective date of the 1978 FIFRA amendments (October 1, 1978, *Monsanto,* 104 S.Ct. at 2875 n. 10), are property of which it has been unconstitutionally deprived through the EPA's use of it in support of other pesticide registrations. Lilly knew the makeup of the data consideration and data disclosure provisions of the 1978 amendments when it submitted research data to the EPA under them. Thus, Lilly has no legitimate expectation of entitlement to confidentiality in its research data, submitted after October 1, 1978, beyond that provided by the 1978 FIFRA amendments. Registrants who submit data with notice of the provisions established by the 1978 amendments, and its qualified protection of trade secrets, can claim no property interest under state law in such data. *Union Carbide,* —— U.S. at ——, 105 S.Ct. at 3335. Lilly's voluntary submission of data in exchange for the economic advantages of a FIFRA registration cannot be called

an unconstitutional deprivation of property. *See Monsanto,* 104 S.Ct. at 2876 (same circumstances do not constitute a "taking" under Fifth Amendment).

A different situation is presented by the research data submitted by Lilly under FIFRA's 1972 amendments (effective from October 22, 1972, to September 30, 1978). Under this scheme, Lilly was explicitly assured that the EPA would not disclose publicly, or consider in connection with the application of another, any data submitted by Lilly, if both Lilly and the EPA determined the data to constitute trade secrets. *Monsanto,* 104 S.Ct. at 2877. A registrant had much more control over the disclosure and use of its data under the 1972 amendments than it does now under the 1978 amendments. *Compare* FIFRA § 10, *reprinted in* 1972 *U.S.Code Cong. & Ad. News* 1158–59 *with* 7 U.S.C. § 136h.

Thus, if the EPA, consistent with the authority granted it by the 1978 FIFRA amendments, were now to disclose pre-1978 trade secret data or consider that data in evaluating the application of an applicant in a manner not authorized under the 1972 amendments, Lilly would be deprived of its legitimate expectation of control over the use and dissemination of the data it had submitted under the 1972 provisions. *See Monsanto,* 104 S.Ct. at 2878. Such disclosure or consideration of research data, to the extent such data are cognizable as a trade secret property right under Indiana law, *see Monsanto,* 104 S.Ct. at 2874, would constitute a "deprivation" of property:

> The right to exclude others is generally "one of the most essential sticks in the bundle of rights that are commonly characterized as property." ... With respect to a trade secret, the right to exclude others is central to the very definition of the property interest. *Once the data that constitutes a trade secret is disclosed to others, or others are allowed to use that data, the holder of the trade secret has lost his property interest in the data.* That the data retain usefulness for Monsanto even after they

are disclosed ... is irrelevant to the determination of the economic impact of the EPA action on Monsanto's property right lies in the competitive advantage over others that Monsanto enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge.

*Monsanto*, 104 S.Ct. at 2878 (emphasis added and citation and footnote omitted).

Therefore, at trial, Lilly will have the opportunity to establish that the defendants should be barred under the 1972 FIFRA amendments from appropriating any trade secret data submitted by Lilly between October 22, 1972, and September 30, 1978.

■ Also, Lilly may seek to prove the factual allegations of this count as violative of FIFRA itself. For example, Lilly has alleged that the EPA considered Lilly's research data in support of the issuance and maintenance of the Aceto registrations without providing notice to Lilly of such consideration. Such notification is effectively required by the statute. 7 U.S.C. § 136a(c)(1)(D)(ii) (registrant's data may only be considered in support of an application if, *inter alia*, "the applicant has made an offer to compensate the original data submitter....").

## STATUTE OF LIMITATIONS

The defendants contend that even if Lilly is able to state any claims over which this Court would otherwise have subject matter jurisdiction, those claims would be time barred. In light of this challenge, it becomes important to review briefly the factual allegations of Lilly's complaint which, of course, are to be taken as true on a motion to dismiss. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977).

Lilly obtained its first trifluralin registration in 1963 and has subsequently obtained a total of nine registrations for various trifluralin products. During the period between 1961 and 1983, Lilly has allegedly conducted substantial research on the health, safety, and efficacy of trifluralin to satisfy the requirements of FIFRA, and has submitted the resulting research data to the EPA to support applications for new trifluralin registrations or to maintain existing trifluralin registrations.

Lilly alleges that the EPA used Lilly research data to register two Aceto products known as Aceto Tech and Aceto EC. Aceto Tech was registered by the EPA on January 11, 1973, and Aceto EC was registered on November 14, 1973. No notice of the issuance of these Aceto registrations was given by the EPA and, impliedly, Lilly had no notice that its data were being used in support of the Aceto registrations. Lilly did subsequently learn of the Aceto Tech registration sometime before November 6, 1974, on which date it filed a compensation claim with the EPA for the Lilly research data relied upon by the EPA in support of the Aceto Tech registration. However, Lilly still did not know of the Aceto EC registration at that time.

In 1976 and 1977, the EPA sought to review and reregister all registered trifluralin products, and requested certain data from trifluralin registrants. Lilly complied with these requirements. On August 4, 1982, the EPA announced its final determination concerning the trifluralin-nitrosamine review. It stated that a notice of intent to cancel would be issued to any trifluralin registrant who did not, among other things, conduct certain tests and submit the resulting data to the EPA. All trifluralin registrants were informed of the various tests required. Lilly has complied, or is complying with all such requirements.

In August, 1983, pursuant to a Freedom of Information Act request, Lilly obtained documents from the EPA including an application for reregistration, dated March 12, 1976, and an offer of compensation, filed May 26, 1976, both filed with the EPA by Aceto in response to the trifluralin reregistration notice issued by the EPA in March, 1976. EPA had not published the filing of the application for reregistration in the Federal Register and had not sent,

or required Aceto to send, the compensation offer to Lilly.

■ Title 28 U.S.C. § 2401(a) provides, in pertinent part, that: "Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This statute applies to the case at bar, as it does to every action brought in a United States district court, other than a criminal or an admiralty proceeding. *Werner v. United States*, 188 F.2d 266, 268 (9th Cir.1951); *see also Christensen v. United States*, 755 F.2d 705, 707 (9th Cir. 1985) (§ 2401(a) applies to equitable, as well as legal, claims); *Walters v. Secretary of Defense*, 725 F.2d 107, 113 (D.C.Cir.1983) (legal and equitable claims are to be treated identically under § 2401(a) ).

The EPA contends that Lilly's right of action first accrued when the pertinent Aceto products were initially registered in 1973, thereby causing the statutory period to expire in 1979. Because this lawsuit was not filed until 1983, the EPA claims that it is time barred.

■ However, if a plaintiff is blamelessly ignorant of the existence or cause of an injury, the statute of limitations does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should discover, the injury and its cause. *See Stoleson v. United States*, 629 F.2d 1265, 1269 (7th Cir.1980) (applying § 2401(b) ). As noted *supra*, Aceto sought to rely on Lilly research data in support of its trifluralin reregistration application by submitting a compensation offer to the EPA, in 1976, but Lilly did not discover that its data were to be so used until August, 1983 when it obtained copies of such documents. Moreover, although Lilly knew in 1974 of the EPA's use of its research data in support of the Aceto Tech registration, there is no indication that Lilly discovered the alleged misappropriation of its data with regard to Aceto EC six years before the filing of this cause of action. Applying the *Stoleson* discovery rule to these circumstances, the six-year statute of limitations apparently did not begin to run

until at least August, 1983, so that Lilly's complaint is timely as to those claims.

■ More importantly, regardless of when an injury is discovered the statute of limitations does not always begin to run at the first moment when a wrongful invasion of a protected interest might give rise to a cause of action. *Cooper v. United States*, 442 F.2d 908, 911 (7th Cir.1971). The continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury may give rise to a continuing cause of action. *Id.* at 912. Where the wrong is continuing, the statute of limitations does not begin to run until the wrong is "over and done with." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983).

■ The statutory and constitutional injuries of which Lilly complains, like the alleged EPA wrongs upon which they are based, are of a continuing nature, so as to toll the operation of the statute of limitations in this case. In both Count I and Amended Count III, Lilly complains of EPA actions (and inactions) relating, not only to the initial *issuance* of the pertinent Aceto registrations, but also to the *maintenance* of those registrations.

■ Finally, we note that the continuation of a special relationship, offering the possibility of correction of the injury, may also postpone the running of the statute of limitations. *Cooper*, 442 F.2d at 912. The EPA's relationship with pesticide registrants under FIFRA does not terminate after the initial registration. *See, e.g.,* 7 U.S.C. § 136a(c)(2)(B) (EPA may require additional data to support an existing registration); 7 U.S.C. § 136d(b) (under appropriate circumstances the EPA may cancel or change the classification of a pesticide's registration); 7 U.S.C. § 136k (EPA may issue "stop sale, use, removal, and seizure" orders when it has reason to believe that a pesticide is in violation of a FIFRA provision); 7 U.S.C. § 136f (EPA may inspect books and records of registrants); 7 U.S.C. § 136g (EPA may inspect establishments where pesticides are distributed and sold);

7 U.S.C. § 136d(a) and 40 C.F.R. § 162.-6(c)(1). At the end of each five year period, starting from the date of the initial pesticide registration, the EPA must cancel such registration unless, *inter alia*, it is determined that the registration complies with all FIFRA requirements, including all data requirements necessary for a new registration.

This special relationship under FIFRA between Lilly (as a registrant) and the EPA, in which that agency has rather broad authority, and responsibility, to correct the injuries of which Lilly complains, might also require the tolling of the statute of limitations.

At any rate, because this Court believes that the wrongful conduct which Lilly alleges is of a continuing nature, the EPA's limitation of actions challenge to the complaint is rejected. *Cooper, Meirick, supra.*